# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. SHEPHERD, | ) |
| | ) Civil Action No. 12 - 483 |
| Plaintiff, | ) |
| | ) Judge Arthur J. Schwab |
| | ) Chief Magistrate Judge Lisa Pupo Lenihan |
| v. | ) |
| | ) |
| PITTSBURGH GLASS WORKS, LLC, | ) ECF No. 7 |
| | ) |
| Defendant. | ) |
| | ) |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the Motion to Remand filed by Plaintiff, James E. Shepherd (ECF No.7) be granted. It is further recommended that Plaintiff's request for an award of costs and fees be granted.

### II. REPORT

#### A. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff, James E. Shepherd, filed the instant action in the Allegheny County Court of Common Pleas ("State Court") on March 1, 2010, alleging breaches of two employment agreements and concomitant violations of the Pennsylvania Wage Payment and Collection Law, by his former employer, Pittsburgh Glass Works, LLC ("PGW"). In addition to damages, Plaintiff seeks a declaratory judgment declaring that one of the employment agreements is unenforceable and an injunction preventing PGW from enforcing a non-compete provision contained therein. (Notice of Removal at ¶2, ECF No. 1.) More than two years later, on April 12, 2012, PGW removed the State Court action to this Court.

1

Plaintiff had been an employee of PPG Industries ("PPG"), during which time he entered into an agreement with PPG ("Employee Agreement"), which contained a two-year non-competition provision prohibiting Plaintiff from "accepting employment with, or otherwise engaging in activities or performing services for or on behalf of a Competitor." (Compl. ¶¶ 10, 12, & Ex. A thereto at ¶8(c), ECF No. 1-2, at 5-6, 32.) If Plaintiff was unable to find suitable employment due to the non-competition provision, the Employee Agreement allowed PPG to waive the restriction or to provide "Bench Compensation." (Compl. ¶¶13-14 & Ex. A thereto at ¶9(a), ECF No. 1-2 at 6, 32.) As a long-time employee of PPG, Plaintiff was also entitled to a "Salaried Severance Plan," which provided a one-time cash payment and continued non-cash benefits for departed employees. (Compl. ¶¶17-18.)

On July 3, 2008, PPG sold a majority interest in its automotive glass and services business to affiliates of Kohlberg & Co, which in turn, formed PGW. (Compl. ¶¶20-21.) Plaintiff began employment with PGW and was required to enter into a new employment agreement ("September Agreement"), which was executed on September 29, 2008. (Compl. ¶27.) The September Agreement contained a non-competition provision and provided for the payment of compensation if Plaintiff was unable to find work due to the non-competition provision. (Ex. C at ¶¶8-9, attached to Compl., ECF No. 1-2 at 35). However, this compensation was to be reduced by the amount of any severance paid or payable under any severance or salary continuation plan of PGW, (*id.* at ¶9(b)), and thus, is referred to as "Reduced Bench Compensation" (Compl. ¶30).

On April 30, 2009, Plaintiff was terminated from his employment with PGW without any explanation. (Compl. ¶¶41-42.) After his termination, PGW presented Plaintiff with a Separation Agreement and Release ("Separation Agreement"), which provided him with

2

continuing salary (cash benefit) and medical (non-cash) benefits for eight months. (Compl. ¶¶45-46 & Ex. C attached thereto at ¶5, ECF No. 1-2 at 39.) Plaintiff was informed that unless he signed the Separation Agreement, he was not entitled to any severance pay and would not receive any severance payments. (Compl. ¶47.) However, unbeknownst to Plaintiff at that time, he was entitled to severance payments under the terms of the written Asset Sale Agreement ("ASA") between PPG Industries and Kohlberg. (*Id.* at ¶51.)

Subsequently, Plaintiff sought and received an offer of employment from Central Glass Co., Ltd ("Central Glass"). (Compl. ¶52.) Plaintiff informed PGW of his new position with Central Glass on November 5, 2009, and requested confirmation that his new position with Central Glass would not trigger the prohibition against accepting employment with a competitor in paragraph 8(c) or the September Agreement. (*Id.* at ¶65.) Subsequently, PGW informed Plaintiff that it intended to enforce the two-year restrictive covenant in the September Agreement. (*Id.* at ¶66.) Thereafter, Plaintiff requested that he receive payments as provided in paragraph 9(b) in the September Agreement. (*Id.* at ¶67.) In late November of 2009, Plaintiff received a payment from PGW, but it did not contain any compensation for PGW's decision to enforce the two-year non-compete provision. (*Id.* at ¶72.) PGW declined Plaintiff's request for Bench Compensation and/or Reduced Bench Compensation, contending it had no obligation to pay any amounts to enforce the two-year non-compete provision. (*Id.* at ¶73-74.) Consequently, Plaintiff instituted this action in State Court to enforce his rights to Bench and/or Reduced Bench Compensation under the operative agreements, and to seek an injunction removing the two-year non-compete provision.

After a preliminary injunction hearing and ruling in Plaintiff's favor, which was upheld on appeal to the Pennsylvania Superior Court, and two-years of discovery, PGW filed a Notice

of Removal on April 12, 2012, thereby removing this action to federal court. PGW predicated this Court's removal jurisdiction on 28 U.S.C. §§ 1331 and 1441. (Notice of Removal, ¶ 9, ECF No. 1.) Specifically, PGW avers that Plaintiff's claims for breach of contract are preempted by ERISA § 502(a). (*Id.* at ¶7.) Additionally, PGW asserts the removal of this matter was timely because it was made within 30 days of its ability to determine that Plaintiff's breach of contract claims are preempted by ERISA. On May 11, 2012, Plaintiff timely filed a Motion for Remand, Costs, and Expenses (ECF. No. 7). In response, PGW filed a Memorandum of Law in Opposition to Plaintiff's Motion to Remand (ECF No. 9) (hereinafter ("Def.'s Mem. in Opp'n"), on May 25, 2012. As the motion to remand has been fully briefed, it is ripe for disposition.

### B. LEGAL STANDARD – REMOVAL & MOTION TO REMAND

Section 1441 of Title 28, United States Code, governs the removal of a case to federal court. Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant…, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) (other citations omitted)); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005). Where a motion for remand is filed, the defendant has the burden of proving that removal was proper. *Sikirica*, 416 F.3d at 219 (citing *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).

The time for removal is governed by Section 1446(b), which provides, in essence, that the notice of removal shall be filed within thirty days after receipt by the defendant of a copy of

4

the initial pleading, unless the case stated by the initial pleading is not removable. 28 U.S.C. § 1446(b). In the latter situation, "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable [.]" *Id*.

### C. DISCUSSION

Plaintiff disputes that this Court has subject matter jurisdiction and has filed a motion for remand. (Pl's Mot. For Remand, ¶ 15, ECF No. 7.) In support, Plaintiff advances several arguments: (1) Plaintiff submits that under the well-pleaded complaint rule, he has not asserted any federal claim in this complaint or sought any relief or damages that could be deemed federal in nature (*id*. at ¶ 16); (2) Plaintiff argues that the complete preemption doctrine does not apply to his claims; (3) even if his breach of contract claims could be construed as claims for benefit under an ERISA plan, which they are not, the state and federal courts have concurrent jurisdiction, and PGW waived federal jurisdiction by failing to raise it . . . ; and, (4) the notice of removal is untimely. In light of the Court's disposition with regard to Plaintiff's first two arguments, it need not reach the latter two arguments.

#### 1. The Well-Pleaded Complaint Rule

In removal cases, the existence of federal court jurisdiction is usually determined under the well-pleaded complaint rule, which provides that federal question jurisdiction is established when the face of a properly pleaded complaint asserts a federal question. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)). The well-pleaded complaint rule "makes the plaintiff the 'master of the claim,' meaning that he or she may avoid federal jurisdiction by forgoing federal causes of action and basing the

claim on only state law." *Scott v. Sysco Food Serv. of Metro N.Y., L.L.C.*, Civ. A. No. 07-3656 (SRC), 2007 WL 3170121, *2 (D.N.J. Oct. 26, 2007)(citing *Caterpillar*, 482 U.S. at 392 (other citation omitted)). "Under the well-pleaded complaint rule, there can be no removal on the basis of a federal question unless the federal law under which the claim arises is a direct and essential element of the plaintiffs (sic) case." *In re Community Bank of N. Va.*, 418 F.3d 277, 293 (3d Cir. 2005) (citing *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10-12 (1983); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)).

Plaintiff submits that under the well-pleaded complaint rule, he has not asserted any federal claim in his Complaint or sought any relief or damages that could be deemed federal in nature. (Pl's Mot. For Remand, ¶ 16, ECF No. 7.) It appears that PGW does not dispute this contention. After conducting its own review of the Complaint, the Court finds that an ERISA benefit plan is neither a direct or essential element of any of the causes of action set forth in the Complaint. Rather, the Complaint asserts claims for breach of two employment contracts—one with Plaintiff's prior employer, PPG (the Employee Agreement) and the other with PGW (the September Agreement)—and for violation of the Pennsylvania Wage Payment and Collection Law, 43 P.S. §260.1 *et seq.* ("WPCL"), involving the Employee Agreement and September Agreement (Compl., Counts I - IV). As damages, Plaintiff seeks Bench Compensation and/or Reduced Bench Compensation allegedly owed under the two employment agreements, as well as liquidated damages, interest, and attorneys' fees due under the WPCL.[1] The WPCL provides a

---

[1] The Complaint also contains a request for declaratory (Count V) and injunctive (Count VI) relief as to paragraph 8 of the Employment Agreement and September Agreement, specifically, that paragraph 8 is unenforceable for, inter alia, PGW's failure to pay Plaintiff the full amount of Bench Compensation and/or Reduced Bench Compensation. (Compl., ¶¶ 124(b) & (e), 129-130). In addition, the Complaint seeks a declaration that paragraph 8 of the September Agreement is unenforceable for lack of consideration (*id.* at ¶ 124(a)), and that the Separation Agreement is unenforceable as a result of fraud in the inducement and for lack of consideration (*id.* at ¶¶124(j) & (k)).

statutory enforcement mechanism once an employee's substantive right to compensation has been established. *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. Ct. 2006) (citations omitted). As such, it does not involve the interpretation of or a determination of benefits under an ERISA plan. Accordingly, no basis exists on the face of the Complaint for removal of this action to federal court.

### 2. Complete Preemption Doctrine

PGW submits that this Court has subject matter jurisdiction under 28 U.S.C. §1331 based upon the complete preemption doctrine. (Notice of Removal, ¶ 7, ECF No. 1.) PGW maintains that it was put on notice for the first time that Plaintiff's breach of contract claim was premised, at least in part, on an alleged breach of an ERISA benefit plan when it received Plaintiff's responses to its second set of interrogatories on March 27, 2012. (*Id.* at ¶11.) Plaintiff disputes that the complete preemption doctrine applies here, contending that his responses to Defendant's Interrogatories do not show that his breach of contract claims are premised in whole or in part on an ERISA plan. For the reasons set forth below, the Court finds that the complete preemption doctrine does not apply here.

An independent corollary to the well-pleaded complaint rule is the complete preemption doctrine. *In re Community Bank*, 418 F.3d at 293-94 (citing *Caterpillar*, 482 U.S. at 393). As the Supreme Court explained in *Caterpillar*:

> On occasion, the Court has concluded that the pre-emptive force of a statute is so "extraordinary" that it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987). Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law. *See Franchise Tax Bd.,* 463 U.S. at 24.

482 U.S. at 393 (footnote omitted). In *Metropolitan Life,* the Supreme Court held that state law claims falling within the scope of the civil enforcement provisions of ERISA §502(a), 11 U.S.C. §1132(a), are completely preempted and thus removable to federal court. 481 U.S. at 66; *see also Pryzbowski v. U.S. Healthcare, Inc.,* 245 F.3d 266, 271 (3d Cir. 2001) (citing *Metropolitan Life, supra*). ERISA's civil enforcement provisions, in particular, Section 502(a)(1)(B), provide in relevant part:

> "A civil action may be brought—(1) by a participant or beneficiary—... (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004)(quoting 29 U.S.C. §1132(a)(1)(B)). In other words, complete preemption will apply only if (1) the plaintiff could have brought his claim under ERISA §502(a)(1)(B), *and* (2) no other legal duty (state or federal) independent of ERISA is implicated by the defendant's actions. *Aetna Health*, 542 U.S. at 210. "'Likewise, Section 502(a)(1)(B) preempts a state law cause of action when interpretation of the terms of plaintiff's benefit plan forms an essential part of plaintiff's state law claims.'" *Poindexter v. Miller,* No. 1:09-cv-107-SJM, 2010 WL 1009695, at *3 (W.D.Pa. Mar. 16, 2010) (quoting *Allocca v. Wachovia*, No. 05-0366 (WHW), 2005 WL 2972845 at *3 (D.N.J. Nov.4, 2005)).

The court of appeals for this circuit has noted, however, that "[i]t is important to distinguish complete preemption under section 502(a) of ERISA, which is used in this sense as a jurisdictional concept, from express preemption under section 514(a) of ERISA, which is a substantive concept governing the applicable law." *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir.1999) (citing *Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171-72 (3d Cir.1997)). As Judge McLaughlin so aptly explained in *Poindexter*:

8

> Section 514(a) provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan .... " 29 U.S.C. § 1144(a). State-law claims that are subject to this "express preemption" are displaced and thus subject to dismissal, *see id.*, *Metropolitan Life*, 471 U.S. [at] 739, but they are not subject to removal. *See Joyce v. RJR Nabisco Holdings Corp.*, 126 F.3d 166, 171 (3d Cir.1997) ("ERISA preemption under § 514(a), standing alone, does not ... create federal removal jurisdiction over a claim pled under state law in state court.")
>
> Thus, state law claims that fall outside the scope of § 502, even if they would otherwise be preempted by § 514(a), "are still governed by the well-pleaded complaint rule, and therefore, are not removable under the complete preemption principles ...." *Id.* at 172. *See also Pryzbowski*, 245 F.3d at 275 (anticipated defense of express preemption under § 514(a) cannot be the basis for removal). Moreover, where the claim falls outside the scope of § 502, the district court cannot rule upon an issue of express preemption under § 514. *See Pryzbowski*, 245 F.3d at 275 ("[W]hen the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption.") (quoting *Dukes v. U.S. Healthcare*, 57 F.3d at 355).

*Poindexter*, 2010 WL 1009695, at *2-*3.

Consequently, in order to determine whether Plaintiff's breach of contract claims are completely preempted, the Court must consider whether they fall within the scope of ERISA's civil enforcement provisions. Plaintiff submits, and this Court agrees, that his discovery responses do not show that he could have brought or asserted his breach of contract claims under ERISA § 502(a)(1)(B). At issue are Plaintiff's responses to Interrogatories Nos. 2, 3 and 6 of Defendant's Second Set of Interrogatories. (Ex. D to Pl.'s Mot. For Remand, ECF No. 7-4.) According to PGW, Plaintiff's responses to these interrogatories on March 27, 2012, asserted for the first time that PGW had breached the PPG Severance Plan and put the plan at issue in this matter. A close examination of the record in this case, specifically the pleadings and opinions of

9

the state trial judge and superior court, as well as Plaintiff's responses to the interrogatories, reveals otherwise.

Interrogatory No. 2 asks Plaintiff to "[i]dentify every contract that you contend is in effect between PGW and you." (*Id.* at 6, ECF No. 7-4 at 7.) After lodging an objection to the effect that the information requested had previously been provided in the Complaint, additional pleadings, including the appeal, and in testimony presented at the April 22, 2010 preliminary injunction hearing before the state trial court, Plaintiff responded:

> Plaintiff contends that the relevant contracts and contractual duties in effect between Plaintiff and Defendant are the Employee Agreement, which was assigned to the Defendant under the ASA, and the PPG Severance Plan, which the Defendant was required to honor under Section 5.7 of the ASA. Plaintiff further contends that the inescapable conclusion of both the opinions by both trial court and the Superior Court of Pennsylvania is that these are the operative contracts and obligations and that the September Agreement and the Separation Agreement are void. In particular, both courts offered significant discussion concerning the absence of consideration with respect to the September Agreement and Separation Agreement and noted the Defendant's misrepresentations that induced Plaintiff into signing the Separation Agreement. If and only if a court were to conclude that the Employee Agreement was somehow voided or superseded (which Plaintiff denies), then an operative agreement would be the September Agreement. If and only if a court were to conclude that the PPG Severance Plan was somehow voided or superseded (which Plaintiff denies), then the Separation Agreement would become an operative agreement.

*Id.* It is clear from Plaintiff's response, when considered in light of the entire record, that he is identifying those agreements which he believes to be the operative agreements *pursuant to the ASA,* which requires an interpretation of the ASA, *not the PPG Severance Plan.* Also, the Court notes that PGW's interrogatory frames the question broadly, asking Plaintiff to identify every

10

contract that is "in effect" between PGW and Plaintiff, as opposed to the contracts actually placed at issue (i.e., providing a source for damages or other relief) in the Complaint.

Interrogatory No. 3 states: "For every contract identified in response to Interrogatory No. 2, identify every provision that you contend PGW has breached and, for each alleged breach, state what conduct you contend constitutes a breach." *Id.* After lodging the same objection raised in response to Interrogatory No. 2, Plaintiff responded: "Defendant breached the Employee Agreement by failing to pay any Bench Compensation. Defendant breached the PPG Severance Plan by failing to pay the severance payment in the proper amount in a single lump sum at Plaintiff's termination." *Id.* at 7, ECF No. 7-4 at 8. Although Plaintiff's response asserts that PGW breached the PPG Severance Plan, that statement must be read in context with his response to Interrogatory Nos. 2 and 5,[2] as well as the pleadings and state court opinions, which make clear that the ASA between PPG and Kohlberg provides the source of Plaintiff's alleged entitlement to severance benefits under the PPG plan. Nowhere in the Complaint does Plaintiff assert that PGW breached the PPG Severance Plan, nor does he seek as damages the amount due under the PPG Severance Plan. Indeed, neither party appears to dispute the amount that would be due under the PPG Severance Plan. Rather, Plaintiff's reference to the PPG Severance Plan is merely to demonstrate why PGW cannot use the Separation Agreement to avoid paying the

---

[2] In Interrogatory No. 5, Plaintiff was asked to set forth all facts that support his contention in paragraph 4 of his Reply to New Matter and Answer and New Matter to PGW's Counterclaim that "The Separation Agreement is also void '*ab initio.*'" Plaintiff responded, in relevant part: "the Separation Agreement is void *ab initio* because it is not supported by adequate, or even any, consideration and because the Defendant fraudulently and falsely obtained Plaintiff's signature on the Separation Agreement by telling him that he would not otherwise be entitled to severance when, in fact, the ASA required the Defendant to pay severance." (Pl.'s Resp. to Def.'s Second Set of Interrog. No. 5, ECF No. 7-4 at 8-9.)

Bench and/or Reduced Bench Compensation under the Employee and September Agreements.[3] Thus, the only relevance the PPG Severance Plan has to Plaintiff's breach of contract claims is not for any affirmative claim for payment under that plan, but rather, to demonstrate why PGW cannot use the Separation Agreement to avoid paying Bench and/or Reduced Bench Compensation. Accordingly, it is not necessary to look to or interpret the terms of the PPG Severance Plan to determine whether Plaintiff can recover damages on his state law breach of contract claims and/or his claims for declaratory and injunctive relief.[4]

Finally, Interrogatory No. 6 provides: "Set forth all facts that support your contention in paragraph 114 of your Reply to New Matter and Answer and New Matter to Counterclaim that 'the circumstances of his discharge entitled Mr. Shepherd to receive severance benefits under the terms of the ASA that was executed in connection with the Kohlberg Agreement.'" *Id.* at 8, ECF No. 7-4 at 9. Again, after lodging the same objection as raised in Interrogatory Nos. 2 and 3, Plaintiff incorporated his response to Interrogatory No. 2, and then answered: "Additionally, Plaintiff was discharged (a) without cause and (b) under circumstances that entitled him to a severance payment under paragraph 5.7 of the ASA and the terms of the PPG Severance Plan." *Id.* Plaintiff's response to Interrogatory No. 6 also demonstrates that his entitlement to severance benefits in an amount equal to what he would have received under the PPG Severance Plan, and any breach, arises from the terms of the ASA.

---

[3] In addition, PGW's Interrogatory No. 6 acknowledges that Plaintiff's contention regarding the ASA and its impact on the severance plan is set forth in Plaintiff's New Matter to PGW's Counterclaim (Ex. F to Pl.'s Mot. to Remand, ECF No. 7-6), and not as an affirmative claim in the Complaint.

[4] This conclusion is buttressed by the fact that the plan documents for the PPG Severance Plan—documents usually provided to allow the Court to determine whether a plaintiff's state law claims fall within the scope of ERISA §502(a)(1)(B), *Aetna Healthcare,* 542 U.S. at 211—were neither provided by PGW in support of its opposition to remand, nor were they made part of the record before this Court. This omission lends support to Plaintiff's position that interpretation of the PPG severance plan is not necessary to the resolution of his state law breach of contract claims.

Accordingly, the Court finds Plaintiff's responses to PGW's interrogatories cannot be construed as either a challenge to the administration of an ERISA plan or a request for benefits denied under an ERISA plan. *See Poindexter,* 2010 WL 1009695, at *4 (state law claim alleging negligence in processing invalid spousal consent form was not completely preempted by ERISA because it did not challenge administration of benefits under the terms of the plan or plaintiff's eligibility to receive plan benefits, or that benefits were erroneously withheld). As such, Plaintiff would not be able to bring or assert his breach of contract claims under ERISA § 502(a)(1)(B), as required under *Aetna Health*. Nothing in Plaintiff's responses to PGW's interrogatories requires the Court to interpret the terms of the PPG Severance Plan as an essential part of Plaintiff's state law claims. Therefore, Plaintiff's state common law breach of contract claims are not completely preempted by ERISA §502(a)(1)(B).[5]

### 3. Express Preemption Under §514(a)

PGW further maintains that in order for Plaintiff to substantiate his claim that the Separation Agreement is invalid, he must rely on the guarantees of severance payments in the PPG and PGW Severance Plans, which are ERISA benefit plans.[6] PGW argues that because this Court must interpret these ERISA plans in order to substantiate Plaintiff's claims, such claims relate to the ERISA plans so closely as to be preempted. (Def.'s Mem. in Opp'n at 8, ECF No. 9.) Additionally, PGW maintains that Plaintiff's claims that PGW breached the Employee and

---

[5] In further support of his position that the complete preemption doctrine does not apply to his breach of contract claims, Plaintiff relies upon *Jacob v. SmithKline Beecham*, 824 F. Supp. 552 (E.D. Pa. 1993), and *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992). While these cases provide some instruction on the issue of what constitutes an ERISA plan for purposes of determining whether the plaintiff's state law claims are completely preempted by ERISA §502(a)(1)(B), *Jacob*, 824 F.Supp. at 556; *Angst,* 969 F.2d at 1538-39, that is not the focus of the inquiry before this Court. *See* discussion *supra* at 8-12. Thus, these cases are simply inapposite here.

[6] The parties appear to agree that the PPG and PGW Severance Plans are employee benefit plans within the meaning of ERISA. *See* Def.'s Mem. in Opp'n at 10.

13

September Agreements by failing to pay severance in accordance with the PPG and PGW Severance Plans also necessitates the interpretation of those plans, and relates so closely as to invoke ERISA preemption. *Id.*

PGW's argument is fatally flawed in several respects. First, this Court has already determined that an interpretation of the terms of the PPG Severance Plan is not essential to resolve Plaintiff's state law breach of contract claims. Second, PGW could have made this argument, at the latest, once Plaintiff filed his Reply to New Matter, and Answer and New Matter to PGW's Counterclaim (Ex. F to Pl.'s Mot. to Remand, ¶¶113-125, ECF No. 7-6 at 30-31) on August 9, 2010. PGW's argument does not rely on any new information provided in Plaintiff's responses to its second set of interrogatories. Therefore, PGW's assertion of this Court's removal jurisdiction based on this argument is untimely. *See* 28 U.S.C. §1446(b)(3).

Third, and most importantly, this Court lacks jurisdiction to consider PGW's "relate[s] to" argument, as it appears to be predicated upon the express preemption provision in §514(a) of ERISA. That provision states, in essence, that ERISA supersedes any state law that "relate[s] to" any employee benefit plan. However, as the Third Circuit held in *Joyce,* "ERISA preemption under §514(a), standing alone, does not . . . create federal removal jurisdiction over a claim under state law pled in state court." 126 F.3d at 171. In support of its "relate[s] to" argument, PGW relies on several Third Circuit decisions for the proposition that "[s]tate law breach of contract claims such as those raised by [Plaintiff] . . . 'ordinarily fall within the scope of ERISA preemption, if the claims ***relate to*** an ERISA-governed benefits plan.'" Def.'s Mem. in Opp'n at 10, ECF No. 9 (quoting *Ford v. Unum Life Ins. Co.,*, 351 F. App'x 703, 706 (3d Cir. 2009))

14

(emphasis added by PGW).[7] However, PGW's reliance on these cases is misplaced, as none of these cases involves claims such as Plaintiff's. Instead they all involve an interpretation of the express preemption language in §514(a) vis a vis state law claims originally brought in federal court, as opposed to a consideration of complete preemption principles to establish a federal court's removal jurisdiction.

Because this Court has determined that Plaintiff's state law breach of contract claims fall outside the scope of §502(a), even if they would otherwise fall within the express preemption provision of §514(a), Plaintiff's claims are still governed by the well-pleaded complaint rule, and therefore, are not removable under the complete preemption doctrine. *Joyce,* 126 F.3d at 172; *Pryzbowski,* 245 F.3d at 275. Moreover, because Plaintiff's claims fall outside the scope of §502(a), this Court lacks removal jurisdiction and therefore is precluded from ruling on the issue of express preemption under §514(a).[8] *Poindexter,* 2010 WL 1009695, at *3 (citing *Pryzbowski,* 245 F.3d at 275).

### 4. Request for Award of Attorney's Costs and Expenses

In the event the Court grants his motion to remand, Plaintiff asks for an award of attorneys' costs and expenses on the basis that no objectively reasonable basis existed for PGW's removal of this action and the removal was dilatory. PGW counters that it has established an objectively reasonable basis for believing that Plaintiff's most recent interrogatory responses revealed that his breach of contract claims were preempted by ERISA, and therefore, an award of

---

[7] The other two Third Circuit cases relied upon by PGW are *1975 Salaried Retirement Plan for Eligible Employees of Crucible, Inc. v. Nobers,* 968 F.2d 401 (3d Cir. 1992), and *Hooven v. Exxon Mobil Corp.,* 465 F.3d 566 (3d Cir. 2006).
[8] Plaintiff has also raised two other arguments in support of his motion to remand. However, this Court need not address those arguments given its conclusion that the complete preemption doctrine does not apply here.

15

costs and expenses is inappropriate. For the reasons set forth below, the Court finds that Plaintiff is entitled to an award of fees and costs associated with his motion to remand.

Section 1447(c) vests the courts with broad discretion to award "just costs and any actual expenses, including attorney fees, incurred as a result of the removal" where remand is ordered. 28 U.S.C. § 1447(c); *Mint v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996) (citations omitted). The standard for awarding costs and fees when remand is ordered is the existence of an objectively reasonable basis for seeking removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). As the Supreme Court explained in *Martin*:

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources. Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied. In light of these " 'large objectives,' " the standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c).

*Id*. at 140-41 (internal citations omitted). In awarding costs and fees under § 1447(c) when ordering remand, it is not necessary for the court to find that the removing party acted dilatorily

or in bad faith. *Fosnocht v. Demko,* 438 F.Supp. 2d 561, 565 & n. 18 (E.D.Pa. 2006) (citing *Mints*, 99 F.3d at 1260-61).

The court of appeals for this circuit has held under circumstances similar to those in the case at bar that the removing party lacked an objectively reasonable basis for removing a case to federal court based on ERISA preemption. *Mints,* 99 F.3d at 1261. In so holding, the *Mints* court explained:

> In some cases there are very difficult issues raised when a party removes a case filed in a state court to the district court and another party moves to remand. *See, e.g., Goepel v. National Postal Mail Handlers Union*, 36 F.3d 306 (3d Cir.1994), cert. denied, 514 U.S. 1063, 115 S.Ct. 1691, 131 L.Ed.2d 555 (1995). But this case is not difficult as there was no colorable basis for the removal. Mints brought this action under state law. He made no claim that ETS's actions in terminating him and in failing to rehire him violated any federal employment discrimination statute or ERISA. Furthermore, to prove his case Mints either must establish that ETS violated the New Jersey Law Against Discrimination or that he can recover against ETS by proving that it is liable on one or more of his common law counts. While Mints did plead that he lost rights protected by ERISA when ETS terminated his employment and he pointed out that ETS terminated him within two years of the time he would have become eligible for benefits upon taking early retirement, he did not assert that ETS fired him to avoid an obligation to pay benefits. Rather, he merely set forth the loss of his ERISA protected rights as a consequence of ETS's actions which allegedly violated state law. Furthermore, in many employment termination cases in which a plaintiff claims that the employer terminated him or her for discriminatory reasons, the employee will have lost ERISA benefits so that the employee's reinstatement will restore the benefits or a damages award may compensate the employee for their loss.

*Id.* (footnote omitted).

Similarly here, this case does not involve difficult issues because no colorable basis existed for the removal. Plaintiff brought this action under state common law for breach of contract. He has not claimed that the alleged breaches of the Employment and September

17

Agreements violated ERISA (or any other federal statute for that matter). Moreover, in order to recover on his breach of contract claims, Plaintiff must show, inter alia, that the Employee and/or September Agreements are the operative agreements. In order to do so, Plaintiff must show either that (1) the Separation Agreement does not release his claims to Bench and Reduced Bench Compensation (as PGW argues) or (2) that the Separation Agreement is void *ab initio* for lack of consideration. Resolution of these issues does not involve or require an interpretation of an ERISA plan (such as the PPG Severance Plan). As this Court found above, Plaintiff has not made a claim, nor is he seeking damages, for severance pay. Rather, Shepherd has merely asserted in his New Matter to PGW's Counterclaim and in his responses to interrogatories, not in his Complaint, that PGW breached the ASA by not paying severance benefits in an amount equal to the PPG Severance Plan, but only for the purpose of demonstrating that the Separation Agreement lacked consideration and was thus void, thereby making the Employee and/or September Agreements the governing/operative agreements. PGW's argument in support of removal relies on a mischaracterization of the nature of Plaintiff's claims in order to create a basis for removal jurisdiction under the guise of ERISA preemption. However, such mischaracterization finds no support in the well-settled ERISA law on complete preemption.

Additionally, this case had been pending in state court for over two years, during which time PGW received a number of adverse rulings before removing this action to federal court. Practically on the eve of a post-discovery status conference with the state trial judge, PGW filed its Notice of Removal. Shortly thereafter, Plaintiff's counsel contacted counsel for PGW in an attempt to get PGW's consent to remand. In a letter dated April 19, 2012, Plaintiff's counsel advised defense counsel that pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. §1447(c), and 29 U.S.C. §1132(g), the removal was improper and without legal or factual

basis, and set forth in detail his reasons in support. (Ex. H attached to Pl.'s Mot. to Remand, ECF No. 7-8 at 1-2.) PGW responded by letter dated April 26, 2012, stating that based on Plaintiff's response to Interrogatory No. 3, it appeared Plaintiff was now contending that "PGW 'breached the PPG Severance Plan by failing to pay the severance payment in the proper amount in a single lump sum at Plaintiff's termination[,]'" and because Plaintiff was claiming severance under an ERISA plan, Plaintiff's claim was completely preempted by ERISA. (*Id.*, ECF No. 7-8 at 3-4.) On April 27, 2012, Plaintiff's counsel asked defense counsel to reconsider its position, indicating that PGW had wholly mischaracterized Plaintiff's response to Interrogatory No. 3, and reiterating Plaintiff's position that he has never sought payment of severance, and that no claim for severance has or would be pled. (*Id.*, ECF No. 7-8 at 5.) Despite Plaintiff's clarifications, PGW did not consent to remand. PGW's election to continue defending removal of this action, in light of this information, cannot be deemed in good faith.

Thus, for all of these reasons, the Court finds that PGW lacked an objectively reasonable basis for removing this action to federal court based on ERISA complete preemption. As such, it appears that the only reason for removing this case to federal court was to delay litigation of this case and to cause Plaintiff to incur additional costs and fees. Accordingly, an award of fees and costs is warranted here.

      **D.    CONCLUSION**

For the reasons set forth above, the Court recommends that the Motion to Remand filed by Plaintiff, James E. Shepherd (ECF No. 7) be granted, and this case be remanded to the Court of Common Pleas of Allegheny County, Pennsylvania, forthwith. It is further recommended that Plaintiff's request for an award of costs and fees be granted and Plaintiff be ordered to file a petition for fees and costs, including supporting documents and/or affidavit(s).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: July 9, 2012

By the Court:

_____
LISA PUPO LENIHAN
Chief U.S. Magistrate Judge

cc: All Counsel of Record
*Via Electronic Mail*